## Case No. 11,741.

### The RHODE ISLAND.

[8 Ben. 38.] [1]

District Court, E. D. New York. Feb., 1875.

COLLISION — LONG ISLAND SOUND — STEAMER AND TOW—LIGHT—LOOKOUT—DAMAGES.

1. The Rhode Island, a passenger steamer, bound westward to New York through Long Island Sound in the night, met a tug, bound to the eastward, towing two barges, one astern of the other, upon hawsers. The O., which was the stern boat, was distant about a thousand feet from and directly behind the tug. There was a bright light upon the O., and the tug had proper side lights, and a bow and stern light, but as to whether one of these was not so dim as to prevent its being seen at a proper distance, the evidence was conflicting. The night was starlight, and vessels without a light could be seen at a considerable distance. The vessels were approaching each other at an angle, so that the tug showed her green light to the steamer, and that without change of course the first barge was brought directly ahead of the steamer. The speed of the tug was about three miles an hour, and that of the steamer thirteen or fourteen miles. The tug made no change of course or speed. The steamer held her course at full speed till she was close to the first barge, when, discovering the barge for the first time, the steamer was sheered sharply to port, and her engine was stopped and backed, avoiding that barge, but striking the O., which was about twenty-five fathoms behind. *Held*, that, if the lights on the tug and on the O. were not seen from the steamer till too near to avoid the

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

collision, the steamer was in fault for not keeping a careful lookout; and that, if those lights were seen as soon as they could be, the steamer was in fault for attempting to cross between them when so close that no change of her course was possible without bringing her in contact with the one on her port bow.

2. If the light on the tug was dim, it furnished no excuse to the steamer, under the circumstances.

3. The steamer was liable for the damages to the O. and in such damages might be recovered a sum necessary to be expended to repair injuries that were caused by the collision, although the libellant had sold the O. without repairing such injuries.

In admiralty.

Beebe, Wilcox & Hobbs, for libellant.
Dixon & Farnham, for respondents.

BENEDICT, District Judge. This is an action by George W. Teeling to recover damages sustained by the barge Isaac C. Ogden, owned by him, in a collision with the steamboat Rhode Island, which occurred in Long Island Sound, at a point about a mile east of Captain's Island, between 2 and 3 o'clock on the morning of the 23d of October, 1873.

The Rhode Island, a first-class Sound steamer, was bound to New York. The Ogden was a barge bound to the eastward, in tow of the tug Thomas Kiley. The tow of the Kiley consisted of two barges, one astern of the other, upon hawsers. The Ogden was the stern boat, distant about a thousand feet from the Kiley and directly behind her. There was a bright light upon the Ogden and the tug had a bow and stern light, and also proper side lights.

As to whether one of the vertical lights upon the tug, required by law to be displayed by vessels towing, was not so dim as to prevent its being seen at a proper distance, the testimony is conflicting.

The Sound was calm, and the night was starlight, and, although there is some testimony as to the presence of smoke or mist, near the water. the weight of evidence is, that vessels without lights could be seen at a considerable distance.

The speed of the tow was about three miles an hour, and that of the Rhode Island thirteen or fourteen miles an hour. The courses of the Rhode Island and the tow were not parallel. but somewhat angling, sufficiently so to display the green light of the Kiley to the Rhode Island. The vessels were approaching so that without change of course the middle barge of the tow was brought directly ahead of the Rhode Island.

On the part of the tow, there was no change of course or of speed. On the part of the Rhode Island, the original course was held at full speed, until she was close to the tow, and heading directly for the middle boat, when, upon discovering for the first time the presence of that boat, she sheered sharply to port and stopped and reversed her engine. It was too late, however, to escape a collision. The Rhode Island avoided striking

the middle boat, but in doing so ran into the Ogden, which was about 25 fathoms behind, and caused the damage here sued for.

The answer of the Rhode Island avers that the Kiley showed and had set but one light on the flagstaff at the stern, and that the collision was occasioned by the omission of the tug to display proper vertical lights, as required by law. The pilot of the Rhode Island says that seeing no vertical lights, he supposed the lights on the Ogden to be that of a vessel bound the other way—that is, to the westward; and, while attempting to pass between the lights, discovered for the first time the vessel between them, when he at once sheered.

In behalf of the Ogden, it is said that the tug did display the vertical lights required by law; and also, that without vertical lights on the tug, there was no difficulty in seeing the tow and avoiding collision. After repeated examinations of the evidence adduced in support of these theories, I find it impossible to resist the conclusion that the collision in question was caused by the want of a careful watch by the Rhode Island, and not by a failure on the part of the tug to display vertical lights.

That the man stationed for a lookout on the Rhode Island was negligent, cannot be disputed. He says himself that when he saw the light of the tug she was abreast of the Rhode Island. That light he never reported. He did not see the light of the Ogden until after he had seen and reported the middle barge, then directly before him. After passing the steamer he saw the middle boat and supposed it to be a sail ahead. He says: "That was the first object I made after passing the steamer, and that I did report." The pilot of the Rhode Island is under the impression that the lookout made no report at all, until after the captain of the Rhode Island had rushed on deck, having been startled by the sudden change of the steamer's wheel.

It appears, also, from the testimony of the lookout, as well as that of the pilot and wheelsman, that although the lights of the Bolivar, a steamer ahead of them, which passed the tow two or three hundred yards to the northward and was within hearing distance at the time of the collision, were visible, no other lights than those supposed to be on the Kiley or the Ogden were seen from the Rhode Island. It seems clear, therefore, that the lookout on the Rhode Island did not do his duty. I gather further from the whole testimony that, although the pilot and wheelsman of the Rhode Island say they saw the Kiley at the distance of a mile, or a mile and a half. in truth they were close upon the tow before they saw either the light on the tug or the light on the Ogden. In view of the evidence respecting the weather, it is difficult to account in any other way for the failure of those in the pilot house of the Rhode Island sooner to discover that the Og-

den and the tug were moving in the same direction, and that both lights were crossing the course of the Rhode Island—it being undisputed that both the Ogden and the tug displayed lights which were visible at the distance of at least a mile to a mile and a half.

If the truth be, as I incline to believe, that, owing to the want of a proper lookout and perhaps also to confounding the lights of the Bolivar and of the Kiley and of the Ogden, the presence of the Kiley approaching was not discovered until the steamers were near each other, then the fault of the Rhode Island is clear.

On the other hand, if it be true that the lights of the Kiley and Ogden were seen as soon as the night would permit, then I think the Rhode Island is chargeable with fault for attempting to pass between the lights, thus shaving so close that no change of course was possible without bringing her in contact with the light on her port bow. She attempted a hazardous manœuvre without any good cause, and having failed to accomplish it must abide the consequence.

Without, therefore, determining the question whether one of the tug's vertical lights was dim—for inasmuch as it is proved by the claimants themselves that she had the vertical light set, and that both were discovered by the glass, the only question is whether one was too dim to be seen by the natural eye at any considerable distance—I conclude that such a failure of one of her vertical lights on such a night as this is proved to be, if it existed, affords no ground to excuse the Rhode Island for not discovering the Ogden in time to avoid her, but that the real cause of the accident was the want of a proper lookout, and of careful observation from the pilot house of the Rhode Island. As to the action taken on the libellant's vessel when the Rhode Island was about to strike, it is sufficient to say that whatever it was, it could not cast upon the libellant any responsibility for the accident.

The decree must be for the libellant, with a reference to ascertain the amount.

The reference being had, and the commissioner having made his report, the claimants of the Rhode Island filed exceptions to the report.

BENEDICT, District Judge. The only exception to the report of the commissioner in this case calling for examination. is that respecting the allowance for $253.40 for injuries caused by the collision to the libellant's boat which have never been repaired. An examination of the evidence shows clearly that, while some repairs were put upon the vessel, they did not include all the injuries caused by the collision; and I see no reason to doubt that the amount testified to by the witnesses and found by the commissioner to represent those injuries, is substantially correct. This con-

clusion is not affected by the fact that the libellant sold the boat for only $1000.00 less than he gave for her no long time before the collision. The estimate by competent and disinterested persons of the amount necessary to be expended to repair injuries actually inspected by them, is more reliable evidence of the amount of injuries sustained than the evidence here presented as to the price given and obtained for the boat.

The report must be confirmed.